UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

NATHAN MERCADO and JAEL MEADE,

                              Plaintiffs,                    **MEMORANDUM AND ORDER**

                    - against -                              22 Civ. 9462 (NRB)

THE CITY OF NEW YORK and P.O. "JOHN"
BLETCHER, the first name being fictitious
as same is unknown, Shield No. 3912,

                              Defendants.

----------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


     Plaintiffs Nathan Mercado and Jael Meade[1] bring this action

pursuant to 42 U.S.C. §§ 1983 and 1988 against the City of New York

and a police officer alleging claims of false imprisonment, false

arrest, negligent treatment, invasion of privacy, and a civil rights

violation in connection with a March 26, 2021 search and arrest.[2]

---

[1] On January 12, 2024, while this motion was pending, the parties informed the
Court that they "have reached an agreement to settle the claims brought by
plaintiff Jael Meade" and stated that "the Court need not consider the arguments
concerning the merits of plaintiff Jael Meade's claims made in the respective
motion papers.  However, the defendants' motion to dismiss as it pertains to
plaintiff Nathan Mercado's claims remains pending."  ECF No. 32.  On May 29,
2024, the parties submitted an executed Stipulation and Order of Dismissal as to
Meade's claims which was so ordered by the Court on May 30, 2024.  ECF Nos. 33-
34.

[2] The fifth cause of action in plaintiff's amended complaint entitled "Civil
Rights Violation" states that the officers "under color of statute, ordinance,
regulation, custom, or usage . . . subjected plaintiffs to be deprived of their
rights to privacy" and were deprived of their civil rights under the U.S.
Constitution and the New York State Constitution.  Am. Compl. ¶¶ 54-60.
Defendants noted that they "consider this a false arrest/imprisonment claim based
on the allegations."  ECF No. 28 at 1 n.1.  While plaintiff does not specifically
address this issue, plaintiff's memorandum of law in opposition to defendants'
motion references "unreasonable searches or seizures" in relation to an invasion
of privacy and also states, in response to defendants' arguments regarding

ECF No. 21 ("Am. Compl.").   Defendants have moved to dismiss plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, defendants' motion is granted.

## BACKGROUND

### I.    Factual Background[3]

On March 26, 2021, plaintiffs were parked in a lot on Park Avenue between East 155th and East 156th streets in Mercado's vehicle discussing their dinner plans.  Am. Compl. ¶¶ 11-12. According to the amended complaint, body worn camera footage shows that police officers "were all sitting in their patrol cars" and "could not see the inside of plaintiffs' vehicle."  Id. ¶ 18.  Four to five police officers then approached plaintiff's vehicle,

---

qualified immunity, that "a plaintiff can sue an officer's municipal employer for promulgating unconstitutional policies or practices that precipitate officer misconduct."  ECF No. 30-4 ("Opp.") at 7, 10.  Thus, as discussed below, the Court will assume that plaintiff seeks to raise claims of false arrest/imprisonment, an improper search, and a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978), even if inartfully alleged.

[3] The facts considered and recited here are drawn from plaintiffs' amended complaint, ECF No. 21 ("Am. Compl.").  Generally, the facts in a complaint are accepted as true for purposes of the instant motion.  See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The amended complaint specifically alleges that "[p]olice officers' body cam video shows that officers were all sitting in their patrol cars, a distance from the plaintiffs, and they could not see the inside of plaintiffs' vehicle, and either what they might have been holding, or what they might have had in their possession."  Am. Compl. ¶ 18. Defendants have submitted footage from the body worn cameras of various officers depicting the complained-of events.  See ECF No. 29 ("Accarino Decl."), Exs. A-D.  Because the body worn camera footage was specifically referenced by the plaintiffs in their operative complaint and depicts the very events complained-of in the amended complaint, the Court will consider this footage when deciding this motion.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."); see also Norales v. Acevedo, No. 21-549, 2022 WL 17958450, at *2 (2d Cir. Dec. 27, 2022) (summary order) (noting that the district court's consideration of a surveillance video that was integral to the complaint was not erroneous).

requested that plaintiffs exit the vehicle with their hands raised, asked for identification, and searched plaintiffs.  Id. ¶¶ 17, 20. Plaintiffs allege that they "were intimidated and became upset and scared by the number of officers surrounding their vehicle and by the officers' questions."  Id. ¶ 19.

Defendants have submitted excerpts of body worn camera footage from Police Officers Manolin Molina and Yahkeem White and Lieutenant Michael Bletcher, which include footage from March 26, 2021 as early as 4:25 p.m., before Mercado and Meade's arrests.  Accarino Decl., Exs. A-D.  The footage reflects Lieutenant Bletcher approaching Mercado's vehicle stating: "I see the weed already" and "I can smell it."  Id. at Ex. B at 16:25:22-16:25:28.  While speaking with Officer White, Mercado says that he was "only smoking" and the footage depicts a white cigarette in the center console.  Id. at Ex. C ¶¶ 3, 5.

Plaintiffs were then taken to the 40th Precinct where they were held for four hours, issued desk appearances, and then released. Am. Compl. ¶¶ 22-24.  The criminal action against the plaintiffs were dismissed.  Id. ¶ 25.

II.  **Procedural History**

Plaintiffs commenced this action on November 4, 2022.  ECF No. 1.  Plaintiffs served defendants on January 24, 2023 and January 28, 2023. ECF Nos. 8-9.  On August 8, 2023, defendants sought leave to file a motion to dismiss, which plaintiffs opposed.  ECF Nos.

16, 19.  On September 7, 2023, the Court granted defendants' request to file their motion to dismiss without the necessity of a pre-motion conference and granted plaintiffs leave to file an amended complaint.  ECF No. 20.  On September 21, 2023, plaintiffs filed their amended complaint.  See Am. Compl.  After defendants renewed their request to file a motion to dismiss, which went unanswered by plaintiffs, the Court granted defendants' request.  ECF No. 23.

On November 17, 2023, defendants filed the instant motion, ECF No. 27, supported by a memorandum of law, ECF No. 28 ("Mot."), and a declaration of Gregory Accarino, defendants' counsel, annexing excerpts of body worn camera footage of three officers, see Accarino Decl.  On December 15, 2023, plaintiffs filed their opposition to defendants' motion, ECF No. 30, along with a memorandum of law, ECF No. 30-4 ("Opp."), and affidavits from both plaintiffs, see ECF Nos. 30-1, 30-2.  On January 5, 2024, defendants filed their reply. ECF No. 31 ("Reply").

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012). In evaluating the sufficiency of a complaint, a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco, 622 F.3d at 111.

## DISCUSSION

### I.  False Arrest and False Imprisonment

The first two causes of action in plaintiff's amended complaint raise allegations of false imprisonment and false arrest. Am. Compl. ¶¶ 13-39. "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Under New York law, the "tort of false arrest is a species of false imprisonment," the key elements of both being that a person is confined without consent and that such confinement is not justified. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false

arrest, whether that action is brought under state law or under § 1983." Weyant, 101 F.3d at 852 (internal quotation marks and citations omitted). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Harrison v. County of Nassau, 804 F. App'x 24, 27 (2d Cir. 2020) (quoting Singer, 63 F.3d at 119). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citation omitted).

"In order to establish probable cause, it is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987) (internal quotation marks omitted). Rather, "probable cause requires only the possibility of criminal activity or the possibility that evidence of a crime will be found." United States v. Zabala, 52 F. Supp. 2d 377, 382 (S.D.N.Y. 1999) (citing Texas v. Brown, 460 U.S. 730 (1983)); see also Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010) (when assessing probable cause to arrest, "the question with which we are presented is not

whether [the arrestees] were in fact guilty of violation of the New York statute, but rather whether there was probable cause to believe that they were.").

Defendants maintain that there existed probable cause to arrest Mercado because (1) Lieutenant Bletcher "smelled the odor [of] marihuana emanating from [plaintiff's] vehicle;" (2) the officers could see a "white marihuana cigarette" in the car's cupholder; and (3) Mercado and Meade both made admissions that they were smoking. Mot. at 7-10. The Court concurs. The screenshots from the body worn camera footage, submitted in support of defendants' motion, supply a complete defense to plaintiff's claims.

In response, plaintiff raises two arguments. First, plaintiff argues that "the officers had no reason to approach the vehicle simply because it was parked in a public parking lot, and therefore had no probable cause to arrest them until they unlawfully approached them and questioned them." Opp. at 1. However, plaintiff points to no law that prohibits police officers from approaching a vehicle parked in a public parking lot. Further, the last clause in the sentence is an admission that there was probable cause after the police officers approached the plaintiff's car. Thus, the legality of the officers' approach of plaintiff's vehicle in a public parking lot, no matter how uncomfortable it may have made plaintiff, is irrelevant to any § 1983 claims stemming from the Lieutenant's detection of marihuana, demonstrated by his

statements on the footage: "I see the weed already" and "I can smell it."  Accarino Decl., Ex. B at 16:25:22-16:25:28.[4]

Second, plaintiff's argument from hindsight that their arrest occurred five days prior to the legalization of marihuana, which could not prospectively be known, falls of its own weight.  While plaintiff may think the police should have exercised discretion, the fact is that plaintiff's possession of marihuana on the day they were arrested was illegal.  New York Penal Law § 221.05 remained in effect until it was repealed on March 31, 2021, and at the time of plaintiff's arrest provided that a person was "guilty of unlawful possession of marihuana when he knowingly and unlawfully possesse[d] marihuana."  New York Consolidated Laws § 221.05 (1995) (Repealed).  Thus, the presence of the white marihuana cigarette and Mercado and Meade's statements gave officers knowledge or reasonably trustworthy information of the possibility of criminal activity.  Accordingly, defendants had probable cause to arrest plaintiff.[5]

## II.   Invasion of Privacy/Unreasonable Search

To the extent plaintiff also asserts a Section 1983 claim for invasion of privacy caused by an allegedly unreasonable search in

---

[4] Confusingly, plaintiff attempts to raise an argument that the stop may raise an issue under the "fruit of the poisonous tree doctrine."  See Opp. at 6. However, any such argument fails here because the Court cannot discern a predicate for the contention and, in any event, the Second Circuit has held that the "fruit of the poisonous tree" doctrine is "inapplicable to civil § 1983 actions." Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999).

[5] Given that the Court has determined that the officers had probable cause for Mercado's arrest, the Court need not, and does not, reach defendants' qualified immunity argument.

violation of the Fourth Amendment, that claim must be denied because
there was no improper search and seizure.  Although presumptively
unreasonable, a warrantless search may be permissible under "a few
specifically established and well delineated exceptions."  United
States v. Howard, 489 F.3d 484, 492 (2d Cir. 2007) (quoting Coolidge
v. New Hampshire, 403 U.S. 443, 454-55 (1971)).  Here, as reflected
in the body worn camera footage, the officers saw a marihuana
cigarette in the car.  See United States v. Carter, 173 F. App'x
79, 81 (2d Cir. 2006) ("the fact that a marijuana cigarette was
seen in the open ashtray . . . gave rise to a fair probability that
contraband or evidence of a crime would be found elsewhere in the
vehicle").  In addition, a search incident to a lawful arrest is an
additional exception to the warrant requirement.  See United States
v. Delva, 858 F.3d 135, 148 (2d Cir. 2017).  As discussed above,
and although plaintiff argues otherwise, the arrest of plaintiff
was lawful, and thus the search of the vehicle was a permissible
search incident to arrest.

III.  **Monell Claim**

Further, to the extent that plaintiff seeks to raise a
municipal liability claim under Section 1983, that claim must also
fail.  In order to state a claim for municipal liability under
Section 1983, a plaintiff must allege "(1) an official policy or
custom that (2) causes the plaintiff to be subjected to (3) a denial
of a constitutional right."  Torraco v. Port Auth., 615 F.3d 129,

140 (2d Cir. 2010) (internal quotation marks and citation omitted).

Thus, where there is "no underlying constitutional violation . . .

[a court need not] address the municipal defendants' liability under

Monell." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir.

2006). As stated above, plaintiff has not alleged a constitutional

violation.

Moreover, plaintiff cannot point to any specific policy or

custom at issue. Even assuming that this Court is incorrect about

the constitutionality of plaintiff's arrest and the search,

plaintiff cannot rely on a single arrest to establish a policy or

custom. See City of Okla. City v. Tuttle, 471 U.S. 808, 823-24

(1985) ("Proof of a single incident of unconstitutional activity is

not sufficient to impose liability under Monell, unless proof of

the incident includes proof that it was caused by an existing,

unconstitutional municipal policy, which policy can be attributed

to a municipal policymaker.").

**IV.   State Law Claims**

Finally, defendants assert that plaintiff's state law claims,

including state law-based claims of false arrest and false

imprisonment, negligent treatment, and invasion of privacy, are

time-barred. Mot. at 12-13. Under New York Municipal Law, a tort

action against a city or its employees acting in the scope of their

employment must be commenced within one year and ninety days "after

the happening of the event upon which the claim is based." N.Y.

Gen. Mun. Law § 50-i.  "Although section 50-i only refers to suits against 'a city, county, town, village, fire district or school district,' courts have consistently held that the statute of limitations applies to suits against city employees as well." Parker v. City of New York, No. 05 Civ. 1803 (PKC)(GWG), 2008 WL 110904, at *12 n.3 (S.D.N.Y. Jan. 7, 2008).  In addition, state notice of claim requirements apply to state law claims regardless of whether those claims are brought in state or federal court.  See Felder v. Casey, 487 U.S. 131, 151, (1988); Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999).  Notice of claim requirements "are construed strictly by New York state courts."  AT&T v. New York City Dep't of Human Res., 736 F.Supp. 496, 499 (S.D.N.Y. 1990).

Here, plaintiff's complained-of events occurred on March 26, 2021 and the complaint was filed on November 4, 2022, over one year and seven months after the arrest.  Plaintiffs do not even attempt to argue that their state law claims were timely noticed and filed or otherwise oppose dismissal of these claims.  Thus, any state law tort claims are barred pursuant to New York Municipal Law.  See also Wilkov v. Ameriprise Fin. Servs., Inc., 753 F. App'x 44, 47 n.1 (2d Cir. 2018) (affirming dismissal of claims "on the ground that they were 'abandoned' by [the plaintiff] for failure to oppose them in her opposition to [the defendant's] motion to dismiss"); Lipton v. Cty. of Orange, NY, 315 F. Supp. 2d 434, 446 (S.D.N.Y.

2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is granted.  The Clerk of Court is respectfully requested to terminate the motion pending at ECF No. 27 and close the case.


**SO ORDERED.**


Dated:     June 26, 2024
           New York, New York

```
            _____
              NAOMI REICE BUCHWALD
            UNITED STATES DISTRICT JUDGE
```